A02A1416. LOGISTICS INTERNATIONAL, INC. v. RACO/
MELAVER, LLC.
(572 SE2d 388)

POPE, Senior Appellate Judge.

Logistics International, Inc. appeals from the trial court's order granting summary judgment to RACO/Melaver, LLC, Logistics' former landlord. We affirm the order granting summary judgment to RACO, but reverse the award of attorney fees.

The parties entered into a written lease in January 1997 and modified the lease by agreement in August 2000. Under the terms of the modified agreement, both parties had the right to terminate the lease without cause by giving 120 days written notice. The amendment also provided that although Logistics could vacate the premises on or before the effective date of the termination, it would pay all rent and pro rated taxes between the notice date and the effective date of the termination.

On October 11, 2000, Logistics gave written notice to RACO of its intent to terminate the lease and stated that it planned to be physically out of the building on "February 28, 2000." Both parties acknowledge that the date provided in the notice contained an obvious typographical error. RACO's counsel responded by letter dated October 27, 2000, pointing out what it assumed to be a typographical error in the year given in Logistics' notice, and stating that the company presumed Logistics meant the lease termination date to be February 28, 2001. The letter also stated that, in order to avoid any con-

fusion, it was giving its own notice of intent to terminate the lease effective February 28, 2001. The letter further noted that Logistics would be strictly liable for "all damages arising by reason of [its] failure to surrender the premises in accordance with the terms of the lease on such date."

RACO sent Logistics a letter on January 24, 2001, reiterating that the termination date was February 28, 2001, and giving the amounts owed by Logistics under the lease. On January 26, 2001, Logistics sent RACO a letter stating that it was assuming that the lease ended on February 8, 2001, because that date was 120 days after the date of its original notice letter, October 11, 2000. The letter also objected to RACO's assessment of late charges, indicated the amount of rent and expenses that Logistics was willing to pay RACO, and requested a final "walk-through" inspection of the premises in accordance with the lease. RACO did not reply to this letter. Logistics vacated the lease premises on February 8, 2001, and paid RACO rent and expenses in the amount of $17,396.81.

RACO filed suit against Logistics claiming unpaid rent and expenses, as well as attorney fees. The trial court subsequently granted RACO's motion for summary judgment on its claims in the amount of $17,830.05, plus interest. The trial court also awarded RACO attorney fees and allowed the company to submit an affidavit with evidence of its attorney fees. Following RACO's submission of an affidavit, the trial court amended its order to add an attorney fee award of $8,007.02.

1. Logistics asserts that the trial court erred in granting summary judgment because an issue of fact remained as to whether the lease termination date was February 8, 2001, or February 28, 2001. Logistics also contends that an issue of fact exists as to whether RACO's acceptance of a lesser amount operated as an accord and satisfaction. "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We apply a de novo standard of appellate review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Hawthorne Grading & Hauling v. Rampley*, 252 Ga. App. 771 (556 SE2d 912) (2001).

(a) We find no issue of fact as to the termination date in this case. Logistics' October 11, 2000 termination letter contains only one date — February 28, 2000 — and states that the company intended to occupy the premises until that time. While it is undisputed that this date included a typographical error, the October 27, 2000 letter from RACO's attorney makes clear that RACO was interpreting Logistics' letter as giving notice of termination as of February 28, 2001. And just to avoid any confusion, RACO gave its own notice of

termination for that date. Logistics did not reply to that letter or dispute RACO's understanding until January 2001. Under these circumstances, we agree with the trial court's conclusion that the parties had agreed in October 2000 that the termination date would be February 28, 2001. Although Logistics later attempted to "clarify" its earlier letter to change the date of termination to February 8, 2001, this attempt was not made until the notice period had almost expired. Accordingly, we find no issue of fact as to the termination date originally intended by the parties.

(b) We also find no issue of fact with regard to accord and satisfaction. Under OCGA § 13-4-103 (b), the acceptance by the creditor of a check marked "payment in full," or with equivalent language, of less than the full amount owing does not constitute an accord and satisfaction unless "(1) A bona fide dispute or controversy exists as to the amount due; or (2) Such payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt."

Here, there was no independent agreement between the parties that RACO would accept a lesser amount. And even assuming that RACO was on notice of a bona fide dispute before accepting the check,[1] there is no evidence in the record that the check accepted by RACO was marked with conditional language, such as "payment in full." And Logistics' January 26, 2001 letter stating that the check had been sent contains no such express condition. It only indicates that the check represents the total amount Logistics would willingly pay. Accordingly, there was no accord and satisfaction. Compare *Bridges v. Mann*, 247 Ga. App. 730, 733 (2) (544 SE2d 755) (2001) (where letter enclosing check indicated that the check was marked "final payment" and that it was intended to pay the balance owing under the contract). "The question of accord and satisfaction is generally one for the jury, but when there is no genuine issue of material fact, summary adjudication is appropriate." (Citation omitted.) *Quintanilla v. Rathur*, 227 Ga. App. 788, 793 (3) (490 SE2d 471) (1997).

2. Logistics also takes issue with the trial court's award of attorney fees because RACO did not provide the requisite notice under OCGA § 13-1-11. We agree.

Under Georgia law, a lease can be "evidence of indebtedness" within the meaning of OCGA § 13-1-11. *Ga. Color Farms v. K. K. L., L.P.*, 234 Ga. App. 849, 852 (3) (507 SE2d 817) (1998). Therefore, in

---

[1] See *Hawthorne Grading & Hauling*, 252 Ga. App. at 773 (delivery of check contemporaneously with letter notifying creditor of dispute was sufficient to show bona fide controversy existing before tender).

order to recover attorney fees RACO was required to comply with the notice requirements of OCGA § 13-1-11 (a) (3). Even though substantial compliance with the Code section is sufficient, our Supreme Court has held that the notice must provide certain essential elements. *Gen. Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 119 (249 SE2d 596) (1978); *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 845 (3) (392 SE2d 37) (1990). Included among these essential requirements is notice "that the party has 10 days from the receipt of such notice to pay the principal and interest without the attorney fees." *Gen. Elec.*, 242 Ga. at 119.

Here, neither RACO's correspondence nor its pleadings provide this requisite element. Therefore, the trial court erred in awarding attorney fees. *Quintanilla*, 227 Ga. App. at 795 (5); *Derbyshire*, 194 Ga. App. at 845-846 (3); *Third Century v. Morgan*, 187 Ga. App. 718, 721 (3) (371 SE2d 262) (1988).

We find the cases cited by RACO on this point to be factually distinguishable. See *Ins. Indus. Consultants v. Essex Investments*, 249 Ga. App. 837, 844 (4) (549 SE2d 788) (2001) (holding OCGA § 13-1-11 does not apply where landlord sued to enforce five-year term of lease, and thus no indebtedness involved); *Boddy Enterprises v. City of Atlanta*, 171 Ga. App. 551, 552-553 (320 SE2d 374) (1984) (where lawsuit did not involve an indebtedness collected through an attorney after maturity, OCGA § 13-1-11 does not apply).

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 11, 2002.

*Chesnut, Livingston & Pye, Tom Pye*, for appellant.
*Kilpatrick Stockton, R. Randy Edwards*, for appellee.